At this time, we'll hear United States v. Willimon, Rivera, and Whaley. Oh, sorry. Okay, thank you. Okay. May I proceed, Your Honor? Good morning. Good morning, Your Honor. Jonathan Edelstein for the defendant appellant, Jason Willimon. I would like to focus on the disparate treatment that Mr. Willimon received at his resentencing as compared to his co-defendant, Antonio Rivera, and in particular, the disparate way that the district court treated both of these defendants post-sentencing rehabilitation when the resentencing came around. Mr. Rivera cited his good behavior in prison, his participation in teaching activities. The district court found that, in its own words, admirable, and that, among other things, resulted in him receiving a 20-year reduction in the sentence. From 60 to 40. From 60 to 40. Mr. Willimon had very similar, in fact, virtually identical post-sentence rehabilitation. He had no infractions in prison. He learned the skill through his work in prison. He helped teach art to fellow inmates, which is the same as the teaching activities that Mr. Rivera participated in. And, in fact, Mr. Willimon did all of this despite documented cognitive and emotional deficits. And in his case, rather than calling it admirable, rather than reducing the sentence as the district court did with Mr. Rivera, the district court did not say a word about that. And Mr. Willimon received no credit for it at all under Pepper and its progeny. But do you think he's entitled to a comparable percentage reduction? I would submit that he is entitled to some degree of reduction, whether it's a comparable. But if what's necessary for deterrence or what's necessary for just punishment can't be lower than 25 years, if that's what the judge concludes, then the good behavior would be ultimately of no moment, right? Well, Your Honor, first of all, Mr. Willimon received 30 years, both at the original sentencing and at the remand. And in answer to Your Honor's question, I would submit there was a disparate treatment with regard to just punishment and deterrence as well. Mr. Rivera was a part of this conspiracy for only half of the time it occurred. He was a salaried employee, essentially, whereas Mr. Rivera is the boss. But these were all horrendous crimes that they were committing. Your Honor, but the vice boss, Mr. Rivera, I mean, Mr. Whaley, was found to merit 25 years as opposed to the security guard, Mr. Willimon, who gets 30. The ringleader, the boss, the owner, Mr. Rivera, only gets 10 years more. I would submit that that smacks of arbitrariness. Well, isn't there a finding that all of the defendants had committed multiple rapes? Well, Your Honor, I would submit there's very strong evidence to cast in doubt the veracity of those findings. What are their findings? Well, Your Honor, I would point the court, as I did in our brief, to the government's brief the last time this case came up on appeal, where the government is stating as fact that, among other things, certain of these women who worked at the bars recruited friends of theirs and, in one case, their little sister to work there. And if this is a house of horrors with multiple rapes— This sounds like the last appeal. Well, Your Honor, I would submit that sentencing was at issue in the last appeal, too, and I would submit that the same mitigating factors and the same degrees of doubt that existed in the last appeal have relevance to this appeal. The only issue here is substantive unreasonableness, right? That is correct, Your Honor. I'll reserve my time if there's nothing further from the court at this time. Okay. Thank you. Thank you. Good morning. Jim Brandon for John Whaley. In my brief, I have other issues in addition to the substantive unreasonableness of the sentence that was imposed. Mr. Whaley was sentenced to 25 years as he was originally. On the resentencing, he was sentenced to the same term. First of all, there's procedural unreasonableness in the sense that the judge never issued her findings with regard to what the ultimate guideline range was, which is highly unusual when you read it. Normally, all my sentencings begin with the judge, as they should, at the starting point, with the judge issuing a final guidelines calculation. That did not happen here. Isn't the normal . . . not the normal practice, but she also has a written statement at some point in which she indicates whether she adopts or does not adopt the probation report. That's true. She did that after the actual sentencing. She did not rule on the party's disputes at the time of the sentencing, at least with regard to the criminal history category. The defense had argued that this defendant was not a criminal history category 6 and was a 5. We never had a ruling on that at all. But we are reviewing this point for plain error. You are reviewing . . . that's correct. How is your client hurt? The client is hurt because at this point, I don't think he knows how the judge got to the ultimate disposition. And the way I read the sentencing transcript . . . But it's . . . you don't have to . . . you don't find it here, but as was pointed out, you can read it over there. And it's the exact same sentence imposed before, right? It is the same sentence imposed before, but on this resentencing, he even won one of the alleged enhancements that he had lost at the original sentencing. So presumably, he was doing better and ended up getting the same sentence. It appears to me, when I read this record, that she did not . . . she, the judge, did not make the fullest, deepest understanding of all of the facts that might be rewarding of still a lesser sentence the second time around, especially in light of the fact that the serious bodily injury enhancement was not found applicable. But did the judge say that she would give the same sentence regardless? I don't recall that. She did. Yes. That's my recollection. Okay. The second procedural error that I find from this record is that the judge denied the mitigating role adjustment. The court may remember that following the original sentencing in this matter, the Sentencing Commission changed Section 3B1.2 of the guidelines to encourage sentencing courts to impose mitigating role adjustments. I think that Mr. Whaley is deeply deserving of such a mitigating role adjustment. He had no overall understanding of the scope and the structure of the conspiracy. He has extremely low IQ. I would argue that the Riveras actually abused him similarly to all the women working at those bars. They hired . . . That's a closer question, as I read it. But didn't Judge Feuerstein say that it didn't matter, she would have given the same sentence anyway? Well, you've asked me that already. I just don't recall that. Okay. So to the extent, however, that she did not properly determine this guideline enhancement, it should be remanded so that maybe she could take another look and would she give him 25 years yet again. As defense counsel said below, such a term of imprisonment really is generally reserved for murderers. There is a huge amount of mitigation with regard to this particular defendant. His life story is terrifying. Isn't there evidence that he raped someone? There's evidence that he at least groped some of the women, but not to the extent that the other defendants did. And the women at that time were unconscious. Is there evidence that he raped one of the women? I think it was raped and or groped was what the judge found below. They were unconscious? They were unconscious, that's correct, from drinking. And he was responsible for driving these women to and from work. Okay. Thank you. Thank you. Thank you. May it please the court, my name is Amy Bussi. I represent the United States on this appeal. Just briefly to respond to the issues that counsel have raised as to defendant Villiman with the claim to the disparate treatment with Antonio Rivera. I think there are a couple of answers to it. I think one of which, Judge Sullivan, you've observed, I think that the judge in sentencing all three defendants, frankly, one to the bottom of the guideline range, two to below guideline sentences. She was doing a sentence outside the guidelines. She had looked at all the facts before her and decided on the basis of this conduct for how long it went on for each defendant, even looking at their mitigating factors, looking at whether they had any remorse at all, looking at all of those things together and found that the sentences that she imposed were what she felt was appropriate, regardless of, again, the claim that really she should have given more weight to this factor or the other. That kind of balancing is certainly within the court's discretion. There seems to be no doubt, as I remember from the last appeal, that some or most of these women had voluntarily participated in the sex trades before these events. Your Honor. I made that point in a dissent. I suppose it's just a dissent, but did the court take that into consideration? I believe that the court certainly had before it counsel's arguments, even in the resentencing. Some of the attorneys were making the same arguments as they had made in the last sentencing and on appeal that some of these women weren't forced and weren't believed. And again, just to clarify, I think the record is a little unclear of how many victims, if at all, had participated. There were some, I think on cross-examination, where you could claim that, yep, maybe they were involved in something. I think Nelsie was the example that comes to my mind. But there are a number of victims that there's just no information in the record to suggest that. And I can understand because the court precluded it. I didn't remember this. One or another of them were recruiting their siblings. There were a couple who certainly were. I don't think that would be happening, would it? Well, I think it depends on at what point they did and why they did. But we really don't have a detailed record as to what that was. But even regardless of how they got there, there were certainly some that clearly said that they were misled and clearly were forced, were forcibly raped, were held while customers were sexually assaulting them, were raped when they were unconscious. Regardless of what they went into, nobody consents to that. The problem here is that it's somewhat casually done, isn't it? I mean, it's sort of surprising to me that there was no explicit finding of what the guidelines were with respect to Mr. Brandon's client. It's surprising to me that the government didn't say, Judge, you forgot to announce what the range is here, that there weren't findings on some of these other issues, considering this was a remand. Right. Well, I think as to Mr. Whaley, the judge, what the judge was focused on was what the panel had focused the judge on, which was that it was a resentencing for all purposes, right? I do understand that. But I'm trying to explain the record as it is. The court was well aware that the panel was concerned about making findings as to, does the serious bodily injury enhancement apply? And if so, which of any victim does it apply? In Mr. Whaley's case, she found that it did not. And then, does the aggravated sexual abuse enhancement apply? And in which case, to how many victims? And for Mr. Whaley, she found that it did as to some. As to the criminal history category, I think what went on there is if you look at the history of objections prior to the resentencing, counsel had raised the claim, again, that he should have been in criminal history category 5, and took issue with two separate convictions where probation agreed that they shouldn't have been counted, took away those points. So he dropped from 16 criminal history points to 14. As to the remainder of the criminal history challenge, counsel had raised it, I think this is in the fifth PSR addendum, had said essentially, well, look, he was resentenced for violation of probation on all these different offenses on the same day, so it should be the same sentence rule. And probation responded, and correctly so, that no, these were all intervening arrests. He was already convicted and then resentenced on them. So they do appropriately count. Counsel at sentencing did not re-raise her criminal history objection. Again, leaning toward the implication of that is that, and she was very diligent about re-raising all of her other objections, that she implicitly agreed with that assessment. And I think we have confidence, the Court did find it in the statement of reasons, and we have confidence because in the record, as Judge Corman has pointed out, the judge was very explicit as to Mr. Whaley on page 26 of the sentencing transcript, which looks like it's 189 of Whaley's appendix, that everything is the same. If they were successful on appeal as to anything, as to the sentence, everything is the same. So I think here, especially on a plain error claim, we don't have the showing of the substantial evidence. I agree the record could have been better. I agree that I should have said more to ask for a formal calculation on the record, and I apologize for not doing so. But I think that the sentence should be affirmed on that ground. As to go back to Mr. Villiman's claim of the disparate treatment with Mr. Rivera, the only other thing I would say, besides the argument I already made, is that for both Rivera and Whaley, they started, in some senses, in a much worse spot in terms of their prior personal history. Both of them had horrific childhoods. Both of them had limitations with education, even more so than Mr. Villiman, who grew up in a stable childhood that PSR documented, even though, again, one parent left, but he had a stepfather who was very helpful and supportive in his life. He got services at school, and he was able to graduate with a BOCES high school degree. The other two had limited education, and for Whaley in particular, he had mental health issues that weren't getting treated. For those people, I think, to make strides, they're coming from a much farther place back, and so I think the district court could credit their rehabilitation. May still have decided, as Your Honor has pointed out, that there was a floor by which you wouldn't necessarily go based on the conduct that was alleged and proven, or at least the judge found in this case. And if there are no further questions, I'll rely on our papers. Thank you. We'll hear rebuttals. Very briefly, Your Honor, not all of these defendants received below-guideline sentences on remand. Mr. Villiman received a guideline sentence. The other two defendants received below-guideline sentences, both of whom did the same sort of extreme conduct that Mr. Villiman was accused of, and in fact, in Mr. Rivera's case, who is the acknowledged leader, the organizer, the owner, the originator. He received a below-guideline sentence, and his original sentence was reduced by one-third. Mr. Villiman was the only one who received a guideline sentence on remand. With regard to whether Mr. Rivera or Mr. Whaley was started in a much worse spot, I would submit certainly that Mr. Villiman didn't come to this offense in a good spot. He had documented cognitive and emotional deficits that he has been, I mean, he did graduate through BOCES, but he has continued to struggle with all of this, and his activities in prison, including his helping of other inmates through teaching them art, was despite these limitations. And certainly, all other things being equal, Your Honors, the conduct that Mr. Villiman is alleged to have engaged in is no worse than what Mr. Rivera is alleged to have engaged in, and in fact, Mr. Rivera, among other things, ordered a woman beaten half to death because she wouldn't get an abortion. And this isn't something that Mr. Villiman had anything to do with. This occurred well after Mr. Villiman had left these bars. And I would submit any interest in deterrence with regard to Mr. Villiman, and I would point out also that the district court credited Mr. Villiman's statement that he would not commit any further crimes, but that this does not, even if we were to disregard all of the evidence casting doubt on this being sexual slavery, I would submit that the conduct does not provide a meaningful basis to differentiate between Mr. Rivera and Mr. Villiman concerning Mr. Rivera getting a 20-year reduction and Mr. Villiman getting nothing. Thank you, Your Honor. Thank you. Thank you. Thank you all. Well, a reserve decision with respect to United States v. Rivera, 17-1468, that is taken on submission. The case of United States v. Simonson is taken on submission. And the case of Doe v. Kogut is taken on submission. That's the last case on calendar. Please adjourn court.